UNITED STATES, Appellant and Cross-Appellee

v

JAMES PHIFER, JR., Private, U. S. Army,
Appellee and Cross-Appellant

18 USCMA 508, 40 CMR 220

No. 22,052

August 15, 1969

*Captain William R. Steinmetz* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick, Major Edwin P. Wasinger,* and *Major Warren W. Kaufman.*

*Captain James E. Higgins* argued the cause for Appellee and Cross-Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Lieutenant Colonel Charles W. Schiesser.*

## Opinion of the Court

DARDEN, Judge:

Contrary to his plea, the accused was tried and convicted by a general court-martial sitting at Fort Dix, New Jersey, for desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. He was sentenced to a dishonorable discharge, forfeiture of $50.00 per month for eighteen months, and confinement at hard labor for the same period. Approval of the finding and sentence by the convening authority followed, but a board of review then set both aside and ordered a rehearing. The board's action was founded in the belief that the accused was subjected to an incriminating custodial interrogation by an agent of the Federal Bureau of Investigation without first having received the benefit of a proper warning against self-incrimination and of his right to counsel.

As a consequence of the board of review's decision, the Acting Judge Advocate General of the Army has

certified—as is his right under Article 67(b)(2), Uniform Code, supra, 10 USC § 867—the following issue:

> Was the board of review correct in its determination that the law officer erred in admitting in evidence the accused's statements to an apprehending FBI agent indicating that he gave a false name and could not produce his identification card, absent the warnings required by Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966)?

By way of cross-petition for grant of review, the accused assigned and we granted a hearing on the following two additional issues:

> Whether the law officer erred and hence prejudiced the substantial rights of accused by failing to instruct on all the elements of the lesser included offense of absence without proper authority.

> Whether the law officer erred and thus prejudiced the substantial rights of accused by failing to instruct the court prior to sentence regarding the mechanics of voting.

According to the pertinent facts at hand, FBI Agent Ancin testified that he and his partner saw the accused in Brooklyn, New York, on August 16, 1968. On that day they arrived at a specified address where they contacted the building superintendent. From the superintendent, Agent Ancin found that a person was residing in a second floor apartment "who resemble[d] James Phifer's photograph." Upon entering the apartment the witness discovered the accused asleep. Awakened and told that the intruders were agents, the accused was asked to identify himself. His response was "James Dale." To the query "'what is your true name,'" his answer was "'James Phifer.'" Phifer was placed under arrest as a deserter.

Subsequent cross-examination of Agent Ancin resulted in the following exchange between trial defense counsel and the agent:

> "Q: I see. Now, if he had not said he was James Phifer, would you have arrested him anyway?
> "A: Yes.

> "Q: Would you have taken him in?
> "A: Yes.

> "Q: Now was there any means of exit from the bedroom?
> "A: There was one and possible [sic] two windows in the front.

> "Q: How many floors up was this?
> "A: It's the first floor and it is approximately 8 feet above the sidewalk.

> "Q: And at this time he was still undressed except for his underwear?
> "A. That's correct.

> "Q: And were you armed?
> "A: That's right.

> "Q. And you [sic] partner was outside, is that right?
> "A: That's correct.

> "Q: And was he armed?
> "A: That's right."

In holding the admission of this evidence prejudicially erroneous, the board of review reasoned:

> ". . . And again, the government tries to persuade us to the view that the preliminary questioning of a suspect 'for the purpose of obtaining routinely required information as to true identity . . .' is not an interrogation and need not be preceded by a warning.

> "Even though the facts in CM 419542, Allison, 40 CMR —, decided by us on 4 March 1969, are much more aggravated, that decision is dispositive of this case, for we are of the view that where a law enforcement officer confronts a suspect whom he reasonably believes to be the person he intends to arrest, a custodial situation requiring appropriate warnings exists from that moment on, even though the suspect is formally placed under arrest subsequent to the initial confrontation.

> 'By custodial interrogation, we mean questioning initiated by law

**509**

enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.'* Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966) (Emphasis added).

The conviction in this case, accordingly, cannot be allowed to stand."

Basically, the appellate Government counsel contend that the board of review's action constitutes an extension of the *Miranda*[1] concept; they urge that the accused was not in custody and that the questioning was intended solely for identification.

Representative of the authorities relied upon in comparison are Orozco v Texas, 394 US 324, 22 L Ed 2d 311, 89 S Ct 1095 (1969), and United States v Ballard, 17 USCMA 96, 37 CMR 360. In the former, Orozco was tried and convicted of murder without malice by a Texas State court and was sentenced to serve not less than two nor more than ten years in the State prison. It appears that he fought and killed the deceased during a quarrel outside a Dallas restaurant. Afterward he returned to his boarding house to sleep. During the early morning hours, four police officers were admitted to the dwelling. Told where Orozco slept, they entered his room and began their questioning of him without giving prior advice as to either his right of counsel or his right against self-incrimination. From the moment he revealed his name he was restricted in movement and "under arrest." The use of admissions obtained from him in the absence of the required warnings was held to be a violation of the incrimination clause of the Fifth Amendment as construed by Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966). This case, according to appellate Government counsel, indicates that the Supreme Court has not yet extended warning requirements to "precede arrest."

In the *Ballard* case, an air policeman on evening patrol, protecting Government buildings and property, saw Ballard step from a car backed up to the platform of the base equipment office, ascend the platform steps and receive tool boxes from someone inside the building. Confronting Ballard after reaching the scene, the air policeman asked if Ballard worked there. The reply was " ' "Give me a break." ' " When asked for his identification card, Ballard said " ' "How much is it worth to you? Fifty dollars if you let me go." ' " The extrajudicial inculpatory statements were deemed admissible at trial by this Court, without regard to prior Article 31 advice, for in that setting, Ballard was not a suspect and the questions asked of him did not amount to an interrogation within the contemplation of United States v Tempia, 16 USCMA 629, 37 CMR 249, or Miranda v Arizona, supra. Ballard's responses were products only of a guilty conscience. Cf. United States v Holder, 10 USCMA 448, 28 CMR 14; United States v Lake, 17 USCMA 3, 37 CMR 267; United States v Taylor, 5 USCMA 178, 17 CMR 178; United States v Valdez, 38 CMR 602, petition denied, 17 USCMA 662, 38 CMR 441; United States v Davison, 29 CMR 829, petition denied, 11 USCMA 792, 29 CMR 586.

In the case at bar, the board of review, resorting to its fact-finding power, made a factual determination of the issue then before it; of this we have no doubt. Under these circumstances:

". . . [W]e are bound by purely factual determinations of the board of review (United States v Judd, 10 USCMA 113, 27 CMR 187; United States v Remele, 13 USCMA 617, 33 CMR 149), *unless such conclusions are arbitrary and capricious, so as to amount to an abuse of discretion* (United States v Wheatley, 10 USCMA 537, 28 CMR 103). . . ." [United States v Baldwin, 17 USCMA 72, 77, 37 CMR 336.] [Emphasis supplied.]

In United States v Smith, 17 USCMA 427, 430, 38 CMR 225—in response to a certified question involving a board

---

[1] Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966).

of review's dismissal of a conviction because of a lack of speedy trial—the rule was put in this way:

". . . [U]nder the particular circumstances of this case, the first certified issue is answered in the affirmative, for 'Where the board of review decision is rooted solely in findings of fact and where there is a substantial basis for the board of review's action in favor of the accused—as there is in this case—we are not inclined to disturb its finding. Cf. United States v Moreno, 6 USCMA 388, 20 CMR 104; United States v Hendon, 7 USCMA 429, 22 CMR 219; United States v Wheatley, 10 USCMA 537, 28 CMR 103; United States v Remele, 13 USCMA 617, 33 CMR 149.' United States v Lamphere, 16 USCMA 580, 583, 37 CMR 200."

On the facts before us in this case, we cannot say that the board of review's factual interpretation is arbitrary and capricious. We, therefore, answer the certified question in the affirmative.

Because of our holding on the certified issue, we need not pursue the two remaining issues in depth. It is enough to note that the first of the issues above, granted on petition, is also mooted by our not disturbing the board of review's determination in favor of the accused that his judicial confession was inadmissible. Since the confession was inadmissible, the law officer erred when he instructed the court:

". . . Included within the offense of desertion of course is the lesser included offense of absence without leave. Should you fail to find beyond a reasonable doubt that the accused intended to remain away permanently, you may not find him guilty of the offense of desertion, but you may find him by appropriate exceptions and substitutions guilty of this lesser included offense of absence without leave, to which I instruct you the accused has judicially confessed in his testimony. And hence, these elements, that is the absence occurred, was without authority of anyone to grant the accused leave are established by the *accused's judicial confession* without necessity of further proof." [Emphasis supplied.]

On the subject of voting, United States v Johnson, 18 USCMA 436, 40 CMR 148, discusses the requirement and need of the law officer to instruct the court, before sentence, on the mechanics of voting.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.